UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DANA MICHELLE ELVIDGE,

Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

Defendant.

No. CV-09-338-CI

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR 42 U.S.C. § 405(g)

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 11, 13.) Attorney Rebecca M. Coufal represents Plaintiff; Special Assistant United States Attorney Leisa A. Wolf represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 3.) After reviewing the administrative record and briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

Plaintiff Dana M. Elvidge (Plaintiff) protectively filed for disability income benefits (DIB) and supplemental security income (SSI) on January 30, 2007. (Tr. 137, 140, 154.) Plaintiff alleged an onset date of August 31, 1985. (Tr. 137.) Benefits were denied initially and on reconsideration. (Tr. 90, 98.) Plaintiff requested a hearing before an administrative law judge (ALJ), which was held before ALJ Brian K. Duncan on January 29, 2009. (Tr. 26-85.) Plaintiff was represented by counsel and testified at the hearing.

(Tr. 29-41, 51-79.) Medical expert Margaret Moore, Ph.D., and vocational expert Deborah Lapoint also testified. (Tr. 41-50, 79-84.) The ALJ denied benefits. (Tr. 8-18.) The Appeals Council denied review. (Tr. 1.) The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

**STATEMENT OF FACTS**

The facts of the case are set forth in the administrative hearing transcripts, and record and will, therefore, only be summarized here.

At the time of the hearing, Plaintiff was 44 years old.[1] Plaintiff graduated from high school and had vocational training as a dental assistant. (Tr. 30.) She last worked in 1985 as a dental assistant. (Tr. 30.) Plaintiff has fibromyalgia and migraines. (Tr. 35.) She testified she has recurring flu-like symptoms including achiness, sore throat, headache, malaise, congestion, intestinal upset, and a general feeling of weakness. (Tr. 37.) Her immune system does not suppress viruses like a normal immune system does. (Tr. 54.) She experiences daily muscle pain in her neck, shoulders, feet, hips, back and knees. (Tr. 70.) She gets migraines almost twice a week. (Tr. 54.) They cause excruciating pain, nausea, and vomiting. (Tr. 77.) When she has a migraine, she cannot have a light, television screen or computer on. (Tr. 54.) Plaintiff testified she does not have mental problems but does have difficulty focusing and concentrating. (Tr. 40-41.)

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner’s decision. 42 U.S.C. § 405(g). A court must uphold the

[1]Plaintiff was born June 11, 1964. (Tr. 137.)

Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler,* 760 F. 2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F. 3d 1094, 1097 (9th Cir. 1999). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan,* 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services,* 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze,* 348 F.2d 289, 293 (9th Cir. 1965). On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in

weighing the evidence and making the decision. *Brawner v. Sec'y of Health and Human Services,* 839 F.2d 432, 433 (9th Cir. 1988). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

**SEQUENTIAL PROCESS**

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423 (d)(1)(A), 1382c (a)(3)(A). The Act also provides that a Plaintiff shall be determined to be under a disability only if his impairments are of such severity that Plaintiff is not only unable to do his previous work but cannot, considering Plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if he or she is engaged in substantial gainful activities. If the claimant is engaged in substantial gainful activities, benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

If the claimant is not engaged in substantial gainful activities, the decision maker proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied.

If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404, Subpt. P, App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.

If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work he or she has performed in the past. If plaintiff is able to perform his or her previous work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity ("RFC") assessment is considered.

If the claimant cannot perform this work, the fifth and final step in the process determines whether the claimant is able to perform other work in the national economy in view of his or her residual functional capacity and age, education and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish

a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a physical or mental impairment prevents him from engaging in his or her previous occupation. The burden then shifts, at step five, to the Commissioner to show that (1) the claimant can perform other substantial gainful activity, and (2) a "significant number of jobs exist in the national economy" which the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**ALJ'S FINDINGS**

At step one of the sequential evaluation process, the ALJ found Plaintiff has not engaged in substantial gainful activity since August 31, 1985, the alleged onset date. (Tr. 10.) At step two, he found Plaintiff has the following severe impairment: very severe vascular headaches. (Tr. 10.) At step three, the ALJ found Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. (Tr. 13.) The ALJ then determined:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) . . . except she is capable of simple routine work but requires the ability to stand and stretch 15 minutes every hour. She should avoid intense interaction with others and only superficial public contact.

(Tr. 13.) At step four, the ALJ found Plaintiff is unable to perform any past relevant work. (Tr. 16.) After taking into account Plaintiff's age, education, work experience, residual functional capacity and the testimony of a vocational expert, the ALJ found there are jobs that exist in significant numbers in the national economy

that the Plaintiff can perform. (Tr. 1.) Thus, the ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from August 31, 1985, through the date of the decision. (Tr. 18.)

**ISSUES**

The question is whether the ALJ's decision is supported by substantial evidence and free of legal error. Specifically, Plaintiff asserts the ALJ: (1) erroneously determined Plaintiff does not have additional severe impairments; (2) failed to adequately develop the record; (3) improperly dismissed the testimony of lay witnesses; (4) made an unsupported credibility determination; and (5) failed to include all of the limitations found in RFC in the hypothetical to the vocational expert. (Ct. Rec. 12 at 9-23.) Defendant argues the ALJ: (1) made a proper step two finding; (2) properly summarized Plaintiff's credible functional limitations in the RFC and hypothetical to the vocational expert. (Ct. Rec. 14 at 4-13.)

**DISCUSSION**

It is noted at the outset that although Plaintiff filed both DIB and SSI applications, Plaintiff's counsel indicated at the hearing that Plaintiff is not eligible for SSI. (Tr. 30, Ct. Rec. 12 at 1, n.1.) As such, the ALJ found Plaintiff must establish disability on or before the date last insured of December 31, 1990. (Tr. 8.) *See* 42 U.S.C. § 423(c); 20 C.F.R. § 404.1520. The burden of proof on this issue is on the claimant. *Morgan v. Sullivan*, 945 F.2d 1079, 1080-81 (9th Cir. 1991). There is little medical evidence in the record for the period of August 31, 1985, to December 31, 1990, during which disability must be established. As the ALJ observed, there are essentially only two pieces of medical evidence of record during the

relevant period.  (Tr. 14.)  The first record includes five insurance billing sheets from Riverton Clinic for the period December 12, 1986, to June 11, 1988.  (Tr. 395-99.)  A few words of handwritten notes on the December 12, 1986, record are illegible.  (Tr. 395.)  The March 10, 1987, record indicates Plaintiff was seen for an upper respiratory infection.  (Tr. 396.)  A May 5, 1987, billing sheet indicates allergic rhinitis and vascular cephalgia (vascular headache) and the May 13, 1987, billing sheet indicates acute sinusitis and vascular headache as the reason for the visit.  (Tr. 397-98.)  A June 11, 1988, record notes Plaintiff was seen for a headache.  (Tr. 399.)  These records neither appear to include the signature of a physician or other medical professional, nor do they include any data, impressions, assessments, or reported symptoms.

The second piece of medical evidence from the relevant period is an office visit note dated January 9, 1988, by Dr. Curalli.  (Tr. 233.)  Dr. Curalli noted Plaintiff's symptoms of nasal discharge, stuffiness, facial pain, and productive cough.  (Tr. 233.)  Plaintiff reported that she has periodic problems with allergies.  (Tr. 233.)  Dr. Curalli diagnosed sinusitis and bronchitis with underlying allergic rhinitis type history.  (Tr. 233.)

The record also includes medical evidence outside the relevant period, which was also considered by the ALJ.  (Tr. 10-18.)  Plaintiff asserts a number of errors which are addressed accordingly.

**1.   Step Two**

Plaintiff argues the ALJ erred by failing to find fibromyalgia, migraines and chronic fatigue syndrome as severe impairments.  (Ct. Rec. 12 at 12.)  At step two of the sequential process, the ALJ must determine whether Plaintiff suffers from a "severe" impairment, i.e.,

one that significantly limits his or her physical or mental ability to do basic work activities. 20 C.F.R. § 416.920(c). To satisfy step two's requirement of a severe impairment, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The fact that a medically determinable condition exists does not automatically mean the symptoms are "severe" or "disabling" as defined by the Social Security regulations. *See, e.g., Edlund*, 253 F.3d at 1159-60; *Fair*, 885 F.2d at 603; *Key v. Heckler*, 754 F.2d 1545, 1549-50 (9th Cir. 1985).

The Commissioner has passed regulations which guide dismissal of claims at step two. Those regulations state an impairment may be found to be not severe when "medical evidence establishes only a slight abnormality or a combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work." S.S.R. 85-28. The Supreme Court upheld the validity of the Commissioner's severity regulation, as clarified in S.S.R. 85-28, in *Bowen v. Yuckert*, 482 U.S. 137, 153-54 (1987). "The severity requirement cannot be satisfied when medical evidence shows that the person has the ability to perform basic work activities, as required in most jobs." S.S.R. 85-28. Basic work activities include: "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; seeing, hearing, and speaking; understanding, carrying out and remembering simple instructions; responding appropriately to supervision, coworkers and usual work situations; and dealing with changes in a routine work setting." *Id.*

Further, even where non-severe impairments exist, these

impairments must be considered in combination at step two to determine if, together, they have more than a minimal effect on a claimant's ability to perform work activities. 20 C.F.R. § 416.929. If impairments in combination have a significant effect on a claimant's ability to do basic work activities, they must be considered throughout the sequential evaluation process. *Id.*

As explained in the Commissioner's policy ruling, "medical evidence alone is evaluated in order to assess the effects of the impairments on ability to do basic work activities." S.S.R. 85-28 Thus, in determining whether a claimant has a severe impairment, the ALJ must evaluate the medical evidence.

In this case, as noted above, the medical evidence is limited for the period during which disability must be established. The Riverton Clinic billing sheets establish at most that Plaintiff visited the doctor for upper respiratory infection, allergic rhinitis, vascular headaches and sinusitus either separately or in combination on four occasions between March 1987 and June 1988.[2] (Tr. 396-99.) She also paid one visit to Dr. Curalli who diagnosed sinusitis and bronchitis with underlying allergic rhinitis type history. (Tr. 233.) The first mention of fibromyalgia is in a 1994 physical therapy record, and the basis of that assessment is not clear from the record.[3] (Tr. 226.) Furthermore, chronic fatigue and migraines are not mentioned in the

---

[2]A billing sheet also reflect Plaintiff made a office visit December 1986 but the reason for the visit is not legible. (Tr. 395.)

[3]Plaintiff asserts Dr. Worth diagnosed fibromyalgia, discussed *infra*.

record until 1998.[4] (Tr. 327.) The ALJ concluded there is no objective clinical evidence of a diagnosis of fibromyalgia or migraine headaches during the relevant period and, therefore, found both conditions were nonsevere. This is a reasonable assessment of the evidence, and the ALJ did not err at step two.

**2. Duty to Develop the Record**

Plaintiff argues the ALJ failed to expand the record. (Ct. Rec. 12 at 12-13.) In Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Brown v. Heckler*, 713 F.2d 441, 443 (9th Cir. 1983). The regulations provide that the ALJ may attempt to obtain additional evidence when the evidence as a whole is insufficient to make a disability determination, or if after weighing the evidence the ALJ cannot make a disability determination. 20 C.F.R. § 404.1527(c)(3); *see also* 20 C.F.R. 404.1519a. Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996); *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for

[4]It is noted that Plaintiff told Dr. Marti she was diagnosed with migraines in 1998. (Tr. 236.) Dr. Marti is a physician at Fibromyalgia & Fatigue Centers Inc., who diagnosed Plaintiff with fibromyalgia and chronic fatigue syndrome in 2006. (Tr. 237.)

proper evaluation of the evidence. *Tonapetyan*, 242 F.3d at 1150.

Plaintiff argues the ALJ erred by failing to attempt to obtain records from Dr. Worth, a physician who apparently referred Plaintiff for physical therapy in 1994. (Tr. 226.) In a March 1994 letter addressed to Dr. Worth, Plaintiff's physical therapist assessed fibromyalgia syndrome/myofascial pain syndrome with active trigger points in upper trapezius and periscapular musculature, with posture a contributing factor. (Tr. 227.) The ALJ pointed out that the physical therapist noted Plaintiff was seen for persistent cervical spine and upper trapezius discomfort after a motor vehicle accident in September 2003. (Tr. 15, 226.) It was also noted that Plaintiff initially saw a chiropractor and her symptoms decreased. (Tr. 226.) Plaintiff was discharged from physical therapy after one month due to no significant changes in her subjective complaints. (Tr. 228.)

The record does not contain evidence from Dr. Worth. Plaintiff testified that Dr. Worth diagnosed her with fibromyalgia in "the late eighties."[5] (Tr. 59.) Plaintiff argues the ALJ erred by making no attempt to obtain the records from Dr. Worth, even though Plaintiff admits she attempted to obtain the records but was unable to do so. (Ct. Rec. 12 at 12-13.) Plaintiff testified, "I tried to get records from Dr. [W]orth who started this process. And I couldn't, I couldn't locate him here in Spokane."[6] (Tr. 59.) Additionally, Plaintiff

---

[5]It is noted that Plaintiff told Dr. Marti she was diagnosed with fibromyalgia in the early 1990s "when she was not responding to typical chiropractic treatments." (Tr. 236.)

[6]The transcript indicates Plaintiff named "Dr. Longworth" and references "Dr. Ward," but it is evident that Plaintiff was actually

asserted “medical records from 1984 through the early 1990s have been destroyed and are thereby unavailable.”[7] (Tr. 135.) It is not clear how the ALJ could further develop the record with respect to Dr. Worth when Plaintiff avers the records are unavailable.

Plaintiff also argues the ALJ should have expanded the record by obtaining evidence from a medical expert to address the onset of disabling migraines and fibromyalgia. (Ct. Rec. 12 at 13.) An ALJ may ask for and consider opinions from medical experts on the nature and severity of an impairment or whether an impairment equals the requirements of any Listing. 20 C.F.R. § 404.1527(2)(iii). Policy requires an opinion from a medical expert when medical equivalence is at issue or when an onset date must be inferred. S.S.R. 83-20; S.S.R. 96-6p. However, when an ALJ finds a claimant is not disabled at any time through the date of the decision, S.S.R. 83-20 does not apply and the ALJ is not required to introduce a medical expert into the process. *Sam v. Astrue*, 550 F.3d 808, 810-11 (9th Cir. 2008). Here, the ALJ explicitly found Plaintiff has not been under a disability as defined in the Social Security Act at any time through the date of the decision. Thus, he need not obtain testimony from a medical expert under S.S.R. 83-20 and the ALJ did not err by failing to do so.

**3. Credibility**

Plaintiff argues the ALJ failed to provide the necessary basis for finding Plaintiff not credible. (Ct. Rec. 12 at 16-19.) In

---

referring to Dr. Worth who was addressed in the physical therapy records. (Tr. 59, 226.)

[7]Plaintiff’s letter brief to the Appeals Council was incorporated by reference into her summary judgment brief. (Ct. Rec. 12 at 7.)

social security proceedings, the claimant must prove the existence of a physical or mental impairment by providing medical evidence consisting of signs, symptoms, and laboratory findings; the claimant's own statement of symptoms alone will not suffice. 20 C.F.R. § 416.908. The effects of all symptoms must be evaluated on the basis of a medically determinable impairment which can be shown to be the cause of the symptoms. 20 C.F.R. § 4416.929.

Once medical evidence of an underlying impairment has been shown, medical findings are not required to support the alleged severity of the symptoms. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991). If there is evidence of a medically determinable impairment likely to cause an alleged symptom and there is no evidence of malingering, the ALJ must provide specific and cogent reasons for rejecting a claimant's subjective complaints. *Id.* at 346. The ALJ may not discredit pain testimony merely because a claimant's reported degree of pain is unsupported by objective medical findings. *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989). The following factors may also be considered: (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) claimant's daily living activities; (4) claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of claimant's condition. *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

If the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony. *Morgan v. Apfel*, 169 F.3d 599, 601-02

(9th Cir. 1999). In the absence of affirmative evidence of malingering, the ALJ's reasons must be "clear and convincing." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1038-39 (9th Cir. 2007); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001); *Morgan*, 169 F.3d at 599. The ALJ "must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001)(citation omitted).

The ALJ determined that although Plaintiff's medically determinable impairment could reasonably be expected to cause the alleged symptoms, the Plaintiff's statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with the RFC determination. (Tr. 14.)

In evaluating Plaintiff's credibility, the ALJ discussed the paucity of medical evidence from the relevant period. (Tr. 14-15.) The medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); 20 C.F.R. § 416.929(c)(2). However, in this instance, the lack of medical evidence is not necessarily a reflection of Plaintiff's lack of credibility. Plaintiff and her attorney repeatedly noted difficulty obtaining records due to the passage of time and specifically mentioned physicians whose records were expected to corroborate her claims, if the records were available. Although most records before the last insured date have apparently been destroyed, it does not follow that Plaintiff is therefore not credible. This reason for rejecting Plaintiff's credibility is not supported by substantial evidence and

should not have been considered by the ALJ in making the credibility determination.

The ALJ also noted the passage of time and gaps between records, even after the date last insured. (Tr. 15.) Medical treatment received to relieve pain or other symptoms is a relevant factor in evaluating pain testimony. 20 C.F.R. §§ 416.929(c)(3)(iv) and 416.929.(c)(3)(v). Credibility is undermined by unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment. *Fair v. Bowen* 885 F.2d 597, 603 (9th Cir. 1989). The ALJ is permitted to consider the claimant's lack of treatment in making a credibility determination. *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).

After the limited evidence available from the period between 1985 and 1990, the medical record is silent until the 1994 physical therapy report. (Tr. 226-28.) After a two-year gap in the record, office visit notes from January 1996 chronic cervical and upper thoracic strain. (Tr. 327.) Dr. Curalli noted that Plaintiff "perceives that she has fibromyalgia" and he explained that fibromyalgia is a difficult diagnosis to make. (Tr. 327.) Two-and-a-half years passed before her next office visit with Dr. Curalli in August 1998, who referred her to a neurologist for headaches. (Tr. 327.) She saw Dr. Carlson, a neurologist, in November 1998 and was diagnosed with chronic daily headache disorder manifested by a mixed headache problem. (Tr. 329-30.) Dr. Carlson opined that the predominant problem is muscle contraction headaches. He prescribed medication and recommended frequent stretching exercises. (Tr. 330.) Plaintiff did not want to start daily medication to address the chronic daily headache disorder and instead wanted to focus on her migraines. (Tr.

332.) Plaintiff canceled a follow up appointment with Dr. Carlson. (Tr. 334.) The ALJ noted that more than two years passed before Plaintiff next saw Dr. Buscher about her chronic illness, muscle pain, migraines and fatigue in June 2000. (Tr. 229.)

Based on the gaps in the record, the ALJ concluded that Plaintiff's headaches and other muscle issues are not so debilitating as to prevent her from performing any work activities. (Tr. 15.) It is appropriate to consider the sporadic nature of treatment in assessing credibility, and the ALJ's conclusion is supported by the evidence. Over the 10-year period following Plaintiff's date last insured, the record remains sparse: two consecutive months of physical therapy records from 1994, two office visit notes from treating physician Dr. Curalli in 1998, and office visit notes and a letter from neurologist Dr. Carlson in 1998. Even assuming earlier gaps in the evidence may be due to loss or destruction of records,[8] Plaintiff visited her treating physician, Dr. Curalli, only twice between 1996 and 2000. It was not unreasonable for the ALJ to infer Plaintiff's

---

[8]When asked to list doctors seen between 1985 and 1990, Plaintiff named Dr. Custine, Dr. Livingston, Dr. Infanaway, Dr. Ross Shelton, Dr. Harrison, and Dr. Paul Shelton. (Tr. 51-52.) Plaintiff later named Dr. Worth as the physician who diagnosed her with fibromyalgia in "the late eighties." (Tr. 59.) Her testimony suggests contemporaneous records of her father-in-law, a chiropractor, may have supported her claim. (Tr. 59.) The physical therapist's letter to Dr. Worth in 1994 suggests Dr. Worth would have seen Plaintiff in 1994. There is no indication or assertion that other, later records are missing or unavailable.

sporadic doctor visits indicates that her symptoms were not as disabling as alleged. This undermines Plaintiff’s credibility as to the alleged severity of symptoms during the relevant period, as well.

The ALJ is responsible for reviewing the evidence and resolving conflicts or ambiguities in testimony. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir.1989). It is the role of the trier of fact, not this court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. The court has a limited role in determining whether the ALJ's decision is supported by substantial evidence and may not substitute its own judgment for that of the ALJ, even if it might justifiably have reached a different result upon de novo review. 42 U.S.C. § 405(g). In this case, the ALJ’s credibility determination was based on clear and convincing reasons supported by substantial evidence.

**4. Lay Witness Statements**

Plaintiff argues the ALJ failed to properly consider the statements of Plaintiff’s mother, father and uncle. (Ct. Rec. 12 at 15.) An ALJ must consider the testimony of lay witnesses in determining whether a claimant is disabled. *Stout v. Commissioner of Social Security*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant’s symptoms or how an impairment affects ability to work is competent evidence and must be considered by the ALJ. *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009). If lay testimony is rejected, the ALJ “‘must give reasons that are germane to each witness.’” *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir, 1996) (citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)).

The record includes statements from Plaintiff’s father, Frank W. Payne, and mother, Carol J. Payne, both dated December 17, 2008, and the statement of Plaintiff’s uncle, Bill Payne, dated December 26,

2008. (Tr. 208, 210, 217.) The statements of Plaintiff’s father and mother mention events throughout Plaintiff’s life, while her uncle’s statement speaks more generally of shared “afflictions.” (Tr. 208-11, 217.) In particular, Plaintiff’s father mentions recurring flu-like symptoms during the period at issue and an inability to return to work after the birth of her first child in 1985 due to lack of consistent health. (Tr. 208-09.) Plaintiff’s mother also mentioned repetitive flu symptoms during the relevant period. (Tr. 210-11.) Notably, Defendant does not respond to Plaintiff’s argument.

The ALJ mentioned several reasons for giving less weight to the opinions of Plaintiff’s father, mother and uncle. First, the ALJ pointed out that the close relationship between claimant and the witnesses, which raises the possibility that their statements were influenced by their desire to help her. (Tr. 16.) In particular, the ALJ noted that although their statements reflect descriptions of symptoms and limitations similar to those alleged by claimant, the statements were written many years after the events occurred. (Tr. 16.) Friends and family members in a position to observe a claimant's symptoms and daily activities are competent to testify as to her condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). Because the ALJ is required to consider the testimony of family members, the mere existence of a family relationship does not disqualify a witness. Absent actual evidence that the lay witnesses were motivated by a desire to help the plaintiff, this is not a germane reason to discount their testimony. *See, e.g., Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 694 (9th Cir. 2009) (noting that lay witnesses may not be dismissed because they are inclined to be partial to the claimant; the ALJ must point to “evidence that a

specific [witness] exaggerated a claimant's symptoms in order to get access to his disability benefits”). The family relationship, therefore, is not a germane reason for assigning less weight to the testimony of Plaintiff’s family members.

Second, the ALJ concluded the symptoms mentioned in the statements are not consistent with Plaintiff’s reported activities of doing laundry, preparing meals, going shopping, and driving. (Tr. 11, 16, 248.) Plaintiff is also active with friends and church, including door-to-door ministry eight hours per month. (Tr. 11, 248.) It is reasonable for an ALJ to consider a claimant’s activities which undermine claims of totally disabling pain in making a credibility determination. *See Rollins*, 261 F.3d at 857. Plaintiff’s uncle does not mention any of Plaintiff’s daily activities, and this reason is therefore not germane to his statement. (Tr. 217.) Plaintiff’s father mentions periods in which Plaintiff attempts “to lead as normal a life as possible with these bouts of debilitating illness interspersed” and extreme bouts of illness which make her unable to give attention to work or other activities on a continuous basis. (Tr. 209.) The daily activities identified by the ALJ are not inconsistent with intermittent, reoccurring symptoms. Plaintiff’s mother mentions flu which came back month after month during the relevant period. (Tr. 211.) This statement suggests periods of wellness followed by periods of illness. Again, this is not inconsistent with the activities mentioned by the ALJ, all of which may be performed intermittently in periods of short duration. This reason as discussed by the ALJ is not germane to the witnesses and is not supported by substantial evidence.

Lastly, the ALJ indicated that significant weight was not given

to the lay witness statements because they are not consistent with the medical evidence. (Tr. 16.) Lay testimony may be discounted if it conflicts with medical evidence. *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984). Here, however, there is little medical evidence with which the witness statements can conflict. As discussed *supra*, the fact that medical records for the relevant period are unavailable does not reflect on the veracity of the statements. This reason is not supported by substantial evidence and should not have been considered by the ALJ.

Because there is little medical evidence available from the relevant period, lay witness statements which can speak to Plaintiff's symptoms and ability to work are of particular interest. The ALJ's dismissal of the statements without providing reasons germane to the statements is error.

However, even if the ALJ erred and the witness statements should have been given greater weight, they simply cannot establish disability without the support of underlying medical evidence. Social Security Ruling 06-3p summarizes regulations providing that only an acceptable medical source can, among other things, establish the existence of a medically determinable impairment. As noted above, evidence from other sources can only be used to determine the severity of an impairment and how it affects the ability to work. S.S.R. 06-3p; 20 C.F.R. §§ 404.1513(d), 416.913(d). Even if given substantial weight, the statements of Plaintiff's family members do not establish the existence of fibromyalgia, migraine headaches, chronic fatigue syndrome or any other medically determinable impairment within the meaning of the Social Security Act during the relevant period.

Notably, Plaintiff’s father’s and uncle’s statements do not mention headaches, Plaintiff’s only properly determined severe impairment during the relevant period. It is Plaintiff’s mother’s statement which mentions “difficulties in trying to be a good employ[ee] because of headaches and constant viral sicknesses and sinus infection.” (Tr. 221.)

Because Defendant appears to concede the ALJ did not give germane reasons with respect to the witness statements, and viewing the evidence in the light most favorable to the Plaintiff, the ALJ should reconsider the witness statements on remand.

**5. Step Five**

Plaintiff argues the limitations in the RFC finding were not consistent with the limitations considered by the vocational expert. (Ct. Rec. 12 at 20-23.) The ALJ’s hypothetical must be based on medical assumptions supported by substantial evidence in the record that reflects all of the claimant’s limitations. *Osenbrook v. Apfel*, 240 F.3d 1157, 1165 (9th Cir. 2001). The hypothetical should be “accurate, detailed, and supported by the medical record.” *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999). The ALJ is not bound to accept as true the restrictions presented in a hypothetical question propounded by a claimant’s counsel. *Magallenes v.* Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989); *Martinez v. Heckler*, 807 F.2d 771, 773 (9th Cir. 1986). The ALJ is free to accept or reject these restrictions as long as there is substantial evidence, even when there is conflicting medical evidence. *Id.*

In this case, the ALJ found Plaintiff has the residual functional capacity to perform sedentary work, except she is capable of simple routine work but requires the ability to stand and stretch 15 minutes

every hour and she should avoid intense interaction with others and only superficial public contact. (Tr. 13.) Based on the testimony of the vocational expert, the ALJ concluded jobs exist in the national economy which Plaintiff can perform. (Tr. 17-18.) Plaintiff argues, however, that the limitations identified in the RFC are not the same as the limitations included in the hypothetical to the vocational expert. (Ct. Rec. 12 at 21-22.)

The first hypothetical posed to the vocational expert assumed an individual with the same work experience and education as plaintiff. The ALJ added:

> Further assume that the claimant retained the residual functional capacity for detailed light work with the following additional limitations. Should not operate moving machinery. Should only have superficial contact with coworkers, supervisors. Now frequently turn their head, head [sic] and neck. Do not hold their head in one position for an extended period of 20, 25 minutes. Should not be exposed to gases or fumes at concentrated levels.

(Tr. 80-81.) When asked if the hypothetical individual could perform Plaintiff's past relevant work, the VE indicated, "Probably not." The ALJ's second hypothetical included the following, "Limited to simple routine light work. Allowed to stand and stretch for one to three minutes every hour. Have no intense interaction with others. And is absent eight hours during the course of a month in various – variable increments due to medical conditions." (Tr. 81.) When asked if the hypothetical individual could perform other work, the vocational expert indicated that there would be other unskilled work available, such as certain cashier jobs, cafeteria attendant, and telemarketer. (Tr. 81-82.) The VE indicated the telemarketer work is actually categorized as sedentary. (Tr. 82.)

The ALJ queried a third hypothetical, "Further limitations

sedentary work as defined by the Social Security regulations as also applies to the light work and superficial probably. And then sedentary work, eliminate the light jobs or cashier reduced all around. What about the telemarketer and so forth?" (Tr. 82.) The VE noted that although cashier is categorized as light work, there are some sedentary cashier positions available. (Tr. 82-83.) The VE also indicated telemarketer positions would be consistent with the last hypothetical. (Tr. 83.) The ALJ confirmed that the telemarketer position would be available when the limitations include sedentary and superficial public contact and the VE agreed. (Tr. 83.)

Plaintiff argues the hypotheticals posed to the vocational expert do not include the limitation included in the RFC requiring the ability to stand and stretch for 15 minutes of every hour. (Ct. Rec. 12 at 22.) Indeed, none of the hypotheticals mentions stretching for 15 minutes every hour. The only mention of stretching is in the second hypothetical which mentions standing and stretching for one to three minutes every hour. As a result, the vocational expert's testimony does not address all of the limitations in the residual functional capacity finding. The step five finding is therefore erroneous and the matter must be remanded.

**CONCLUSION**

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is not supported by substantial evidence and is based on legal error. The matter is remanded for additional testimony from the vocational expert and a new step five finding which takes into account all limitations identified in the RFC. Additionally, the ALJ should reconsider the witness statements and give germane reasons for assigning less weight, if appropriate.

Accordingly,

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment **(Ct. Rec. 11)** is **GRANTED.** The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 13)** is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED**.

DATED January 27, 2011.

S/ CYNTHIA IMBROGNO
UNITED STATES MAGISTRATE JUDGE